**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

SAMANTHA DEJESUS,

                        Plaintiff,

             -against-                        23 Civ. 806 (VLB)

BON SECOURS COMMUNITY HOSPITAL
and LYN WESSELS,

                        Defendants.

----------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, NY 10017
(212) 545-4000

Daniel D. Schudroff, Esq.
Shevonne S. Greene, Esq.

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................. 1

FACTUAL BACKGROUND ................................................................. 3

STANDARD OF REVIEW ................................................................... 7

POINT I ................................................................................................ 8

    PLAINTIFF'S SHRL DISCRIMINATION CLAIMS SHOULD BE
    DISMISSED. .................................................................................... 8

    A.    Plaintiff Fails To Plausibly Allege Discrimination.................... 8

        i.    Standard Of Review ......................................................... 8

        ii.    No Inference Of Discrimination Via Direct Evidence................... 9

        iii.    No Inference Of Discrimination Via Disparate Treatment.......... 11

        iv.    No Failure to Accommodate Disability or Pregnancy…………...13

    B.    Plaintiff Fails To Plausibly Allege A Hostile Work Environment ........... 14

    C.    The Amended Complaint Does Not State A Claim Against
        Wessels ........................................................................... 15

POINT II ............................................................................................. 16

    PLAINTIFF'S NYEPA CLAIM SHOULD BE DISMISSED. ......................... 16

    A.    Plaintiff Fails To Plausibly Allege Unequal Pay ..................... 16

POINT III ............................................................................................ 18

    PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED............. 18

    A.    Plaintiff Fails To State A Retaliation Claim Under the SHRL................. 18

        i.    No Protected Activity ................................................. 18

        ii.    No Causal Connection ................................................. 20

    B.    Plaintiff Fails To State A Retaliation Claim Under The NYEPA ........... 21

        i.    Untimeliness…………………………………………….21

        ii.    No Protected Activity or Causation ..……………………………21

    C.    Plaintiff Fails To State A Retaliation Claim Under the FMLA ................. 22

        i.    Untimeliness ................................................................. 22

        ii.    No Causal Connection ................................................. 23

    D.    The Amended Complaint Does Not State A Claim Against
        Wessels ........................................................................... 23

POINT IV............................................................................................. 24

PLAINTIFF'S FMLA INTERFERENCE CLAIM SHOULD BE DISMISSED. ............................................................................................ 24

A.     Standard Of Review .................................................................................. 24

B.     Plaintiff Was Not Denied Benefits Under the FMLA ............................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

Antoine v. State Univ. of N.Y. Downstate Med. Ctr.,
    2021 U.S. App. LEXIS 37890 (2d Cir. 2021) .........................................................................18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................................................7, 8, 20, 21

Atkinson v. Prabhjot Singh,
    2022 U.S. Dist. LEXIS 8203 (S.D.N.Y. 2022).......................................................................21

Batchelor v. City of New York,
    2014 U.S. Dist. LEXIS 46921 (E.D.N.Y. 2014)....................................................................10

Becton v. Cabs Home Attendant Servs.,
    2008 U.S. Dist. LEXIS 25034 (E.D.N.Y. 2008)....................................................................17

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...............................................................................................................7

Boonmalert v. City of New York,
    721 F. App'x 29 (2d Cir. 2018) ............................................................................................15

Brightman v. Phys. Aff. Grp. of N.Y., P.C.,
    2021 U.S. Dist. LEXIS 95327 (S.D.N.Y. 2021)....................................................................16

Brown v. N.Y.C. Dep't of Educ.,
    2023 N.Y. Misc. LEXIS 173 (Sup. Ct. N.Y. Cty. 2023) ..................................................14, 15

Buchanan v. City of New York,
    556 F. Supp. 3d 346 (S.D.N.Y. 2021)...................................................................................19

Chong v. City of New York,
    2020 N.Y. Misc. LEXIS 2667 (Sup. Ct. N.Y. Cty. 2020) .....................................................10

Cooper v. Templeton,
    2022 U.S. Dist. LEXIS 170820 (S.D.N.Y. 2022)..............................................................11, 12

D'Amico v. Arnold Chevrolet, LLC,
    31 Misc. 3d 1201(A) (Sup. Ct. Suff. Cty. 2011)....................................................................18

Daly v. Westchester Cty. Bd. of Legislators,
    2021 U.S. Dist. LEXIS 12336 (S.D.N.Y. 2021)...............................................................23, 24

Desiderio v. Hudson Techs., Inc.,
    2023 U.S. Dist. LEXIS 6860 (S.D.N.Y. 2023).......................................................................23

Doran v. Ives,
    2021 U.S. Dist. LEXIS 79599 (S.D.N.Y. 2021) ...................................................9

Durand v. Excelsior Care Grp. LLC,
    2020 U.S. Dist. LEXIS 231591 (E.D.N.Y. 2020) ...............................................17

Emmons v. City Univ. of N.Y.,
    715 F. Supp. 2d 394 (E.D.N.Y. 2010) ........................................................24, 25

Fischman v. Mitsubishi Chem. Holdings Am., Inc.,
    2019 U.S. Dist. LEXIS 115616 (S.D.N.Y. 2019) ..............................................22

Freud v. N.Y.C. Dep't of Educ.,
    2022 U.S Dist. LEXIS 54353 (S.D.N.Y. 2022) ..................................................14

Fukelman v. Delta Air Lines, Inc.,
    2020 U.S. Dist. LEXIS 66410 (E.D.N.Y. 2020) ................................................25

Gaughan v. Rubenstein,
    261 F. Supp. 3d 390 (S.D.N.Y. 2017) ................................................................15

Graham v. LIRR,
    230 F.3d 34 (2d Cir. 2000) ..........................................................................11, 12

Grant v. Abbott House,
    2016 U.S. Dist. LEXIS 21195 (S.D.N.Y. 2016) ................................................18

Graziadio v. Culinary Inst. of Am.,
    817 F.3d 415 (2d Cir. 2016) ...............................................................................24

Henry v. NYC Health & Hosps. Corp.,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014) ..................................................................20

Isakov v. HASC Ctr., Inc.,
    2018 U.S. Dist. LEXIS 31624 (E.D.N.Y. 2018) ...............................................10

Khwaja v. Jobs,
    2021 U.S. Dist. LEXIS 65884 (S.D.N.Y. 2021) ................................................18

Khwaja v. Jobs to Move Am.,
    2019 U.S. Dist. LEXIS 197982 (S.D.N.Y. 2019) .........................................21, 22

Kraiem v. JonesTrading Inst. Servs. LLC,
    572 F. Supp. 3d 53 (S.D.N.Y. 2021) ....................................................................8

Murtha v. N.Y.S. Gaming Comm'n,
    2019 U.S. Dist. LEXIS 159783 (S.D.N.Y. 2019) ..............................................11

Patrowich v. Chem. Bank,
    63 N.Y.2d 541 (1984) ........................................................................ 18

Pease v. City of New York,
    2022 N.Y. Misc. LEXIS 6004 (Sup. Ct. N.Y. Cty. 2022) .......................................15

Potenza v. City of New York,
    365 F.3d 165 (2d Cir. 2004)........................................................................23

Ramos v. Metro-North,
    2020 N.Y. Misc. LEXIS 1666 (Sup. Ct. N.Y. Cty. 2020) .......................................15

Reyes v. Westchester Cty. Health Care Corp.,
    2021 U.S. App. LEXIS 31915 (2d Cir. Oct. 25, 2021)..........................................14

Richards v. Dep't of Educ. of N.Y.,
    2022 U.S. Dist. LEXIS 19674 (S.D.N.Y. 2022)................................................14

Romano v. A360 Media, LLC,
    2023 U.S. Dist. LEXIS 10355 (S.D.N.Y. 2023).................................................10

Rose v. Goldman, Sachs & Co.,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)..........................................................17

Santana v. Mt. Vernon City Sch. Dist.,
    2021 U.S. Dist. LEXIS 189907 (S.D.N.Y. 2021) ................................................8

Santana v. Weill Cornell Medicine Primary Care,
    2018 U.S. Dist. LEXIS 166687 (S.D.N.Y. 2018)...............................................24

Shankar v. Ankura Consulting Corp.,
    2021 U.S. Dist. LEXIS 151098 (S.D.N.Y. 2021) ................................................8

Shein v. N.Y.C. Dep't of Educ.,
    2016 U.S. Dist. LEXIS 20015 (S.D.N.Y. 2016) ................................................13

Sletten v. LiquidHub, Inc.,
    2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. 2014) ................................................19

Small v. N.Y.C. Dep't of Educ.,
    2023 U.S. Dist. LEXIS 2099 (S.D.N.Y. 2023)................................................20

Smith v. Johnson,
    636 F. App'x 34 (2d Cir. 2016) .................................................................8

Thompson v. ABVI Goodwill Servs.,
    531 F. App'x 160 (2d Cir. 2013) ................................................................9

Torres v. Vittoria Corp.,
    2008 N.Y. Misc. LEXIS 8800 (Sup. Ct. N.Y. Cty. 2008) ......................................................18

Trovato v. Air Express Int'l,
    238 A.D.2d 333 (2d Dep't 1997) ...........................................................................................15

Tsekhanskaya v. City of New York,
    2020 U.S. Dist. LEXIS 179477 (E.D.N.Y. 2020)...................................................................22

Tulino v. City of New York,
    2018 U.S. Dist. LEXIS 51391 (S.D.N.Y. 2018) .....................................................................16

Wellington v. Spencer-Edwards,
    2017 U.S. Dist. LEXIS 162788 (S.D.N.Y. 2018) ...................................................................11

Williams v. City of New York,
    2005 U.S. Dist LEXIS 26143 (S.D.N.Y. 2005) ........................................................................7

Williams v. N.Y.S. Unified Court Sys.,
    2017 U.S. Dist. LEXIS 162736 (S.D.N.Y. 2017) ...................................................................12

Williams v. Westchester Med. Ctr. Health Network,
    2022 U.S. Dist. LEXIS 175332 (S.D.N.Y. 2022) ...............................................................9, 10

Wilson v. JPMorgan Chase Bank, N.A.,
    2021 U.S. Dist. LEXIS 45132 (S.D.N.Y. 2021) .....................................................................21

Woods v. START Treatment & Recovery Ctrs., Inc.,
    864 F.3d 158 (2d Cir. 2017).................................................................................................23

Wright v. Monroe Cmty. Hosp.,
    493 F. App'x 233 (2d Cir. 2012) ...........................................................................................18

Zuckerman v. GW Acquisition LLC,
    2021 U.S. Dist. LEXIS 178873 (S.D.N.Y. Sept. 20, 2021)....................................................13

**Statutes**

Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. ....................................*passim*

New York Labor Law § 194 ............................................................................................18, 21

New York Labor Law § 215 ....................................................................................................21

New York State Human Rights Law, N.Y. Exec. L. §§ 290, et seq. .....................................*passim*

**Other Authorities**

FED. R. CIV. P. 12(b) .......................................................................................................*generally*

## PRELIMINARY STATEMENT

Defendants Bon Secours Community Hospital ("BSCH") and Lyn Wessels (collectively, "Defendants") move pursuant to FED. R. CIV. P. 12(b)(6) for dismissal of Plaintiff Samantha DeJesus' ("Plaintiff") Amended Complaint in its entirety, with prejudice. As detailed fully below, all seven causes of action suffer from one or more fatal defects.

First, Plaintiff's New York State Human Rights Law ("SHRL") gender, pregnancy, and disability discrimination claims must be dismissed because the Amended Complaint fails to plausibly allege Plaintiff suffered an adverse employment action arising under an inference of impermissible discrimination. The Amended Complaint makes clear that Plaintiff was approved for, and took all of the leave she requested, for her first pregnancy, and was terminated much later because she refused to come to work. The Amended Complaint does not plausibly support an inference that Plaintiff's termination had anything whatsoever to do with her gender, pregnancy or purported disability. The allegations likewise do not support that Plaintiff suffered any other actionable adverse employment action, was improperly denied a reasonable accommodation because of her pregnancy or purported disability, or that she was subjected to a hostile work environment due to her gender, pregnancy, or purported disability.

Second, Plaintiff's New York Equal Pay Act ("NYEPA") unequal pay claim must be dismissed because the Amended Complaint does not allege Defendants paid superior wages to male employees who performed substantially equal work. Instead, Plaintiff merely alleges she and a *male* employee made less money than two other *female* employees. This claim is not viable.

Third, all of Plaintiff's retaliation claims are defective. Plaintiff's SHRL retaliation claim cannot withstand dismissal because the Amended Complaint fails to allege Plaintiff engaged in protected activity, let alone activity bearing a causal connection to any adverse employment action, inclusive of her termination. Plaintiff's alleged complaint to Wessels in May 2020

regarding her pay is not protected activity because it did not concern discrimination.  Regardless, Plaintiff was terminated *eight months* later.  This is far beyond what the law considers to be temporally proximate.

Similarly, Plaintiff's NYEPA retaliation claim fails for the same reasons.  Further, Plaintiff's two alleged complaints to her union in June and August 2020, each of which regarded not receiving a day off, are not protected activities.  Even if they were, they, too, are far too remote from Plaintiff's termination to raise an inference of retaliation.

Additionally, Plaintiff's Family and Medical Leave Act ("FMLA") retaliation claim is also time-barred and frivolous.  To the extent that Plaintiff claims that she was retaliated against by not being permitted to take a day off from work on July 4, 2020 and/or being denied one day of paid time off ("PTO") in August 2020, the claim is time-barred.  To the extent that Plaintiff claims that she was terminated in retaliation for taking FMLA leave in 2019, the gap in time between the leave request and Plaintiff's termination is nearly *two years*.  The claim is likewise insufficiently pled.

Fourth, Plaintiff's FMLA interference claim is untimely, in part, and, in any event, frivolous.  Plaintiff requested FMLA leave once in February 2019 in connection with her pregnancy, and the request was granted. There was no interference with this leave. In 2021, shortly before her termination, Plaintiff admittedly did not request FMLA leave, and therefore, could not have been denied leave. Plaintiff's conclusory allegation that she was terminated before she could take leave is defective, warranting dismissal of this claim.

Fifth, the Amended Complaint does not plausibly allege individual claims under the SHRL or New York Labor Law ("NYLL") against Defendant Wessels.  Finally, Plaintiff's

New York City Human Rights Law ("NYCHRL") claim against Wessels is sanctionable given all events recited in the Amended Complaint transpired outside of New York City.

The Amended Complaint should be dismissed, with prejudice.

## FACTUAL BACKGROUND[1]

On June 19, 2017, BSCH hired Plaintiff as an "Authorization Specialist."  Amended Complaint ¶ 13-14.[2]  In February 2019, Plaintiff informed her supervisor, Wessels, that she was pregnant and would need to request leave.  Id. ¶ 20.  Plaintiff alleges that Wessels responded "OK," and speculated that Wessels was "clearly unhappy."  Id. ¶ 21.  Wessels referred Plaintiff to BSCH's Human Resources department ("HR"), who referred Plaintiff to the appropriate insurance carrier to request leave.  Id. ¶¶ 22-23.  Plaintiff was told she was entitled to six weeks of short-term disability leave and ten weeks of leave under the "New York State Paid Family Leave."  Id. ¶ 23.  Plaintiff's leave "coincided with FMLA leave."  Id.

Plaintiff alleges that, subsequently, Wessels and two coworkers—all three female—"ignored and ostracized" Plaintiff.  Id. ¶ 24; see id. ¶¶ 52, 57.  Plaintiff speculates that they did so because of their "disdain for her and her pregnancy," but does not provide any factual support for this claim.  Id. ¶ 27.  Plaintiff alleges that two coworkers were "openly upset that they would have to arrange their vacations around Plaintiff's pregnancy leave…."  Id. ¶ 28.  Plaintiff alleges that, on unspecified dates, coworkers complained to Wessels that Plaintiff taking leave was unfair.  Id. ¶ 48.  Plaintiff alleges that a coworker "turned her back" to Plaintiff.  Id. ¶ 50.  Plaintiff claims Wessels praised a coworker and ignored Plaintiff's accomplishments on unidentified

---

[1] The facts alleged in the Amended Complaint are accepted as true solely for the purposes of this motion to dismiss. Should the motion be denied, Defendants reserve the right to contest such allegations in their answers.

[2] A copy of the Amended Complaint is attached to the Declaration of Daniel D. Schudroff in Support of Defendants' Motion to Dismiss the Amended Complaint, dated May 5, 2023, as "Exhibit A."

occasions on unspecified dates.  Id. ¶ 56.  Plaintiff alleges, without any basis, that Wessels and others "continued to complain about Plaintiff's … intermittent leave behind her back."  Id. ¶ 57.

After being approved for her leave, Plaintiff gave birth on August 29, 2019.  Id. ¶ 33.  Plaintiff took 10 full weeks of leave, and then chose to return to work.  Id. ¶¶ 34-35.  Plaintiff informed Wessels that she would like to use the remaining six weeks of leave on an intermittent basis.  Id. ¶ 35.  Wessels allegedly informed Plaintiff that Wessels would have to verify that Plaintiff was entitled to use the remaining leave intermittently.  Id. ¶ 36.  Plaintiff characterizes Wessels' verification of her entitlement to leave as Wessels having "objected to Plaintiff using intermittent leave," but does not provide support for the allegation.  Id.  After Wessels spoke to the insurance carrier and confirmed Plaintiff was entitled to take the remaining leave intermittently, Plaintiff was approved to do so and did so without incident.  Id. ¶¶ 38, 45.

Plaintiff claims that, during Plaintiff's intermittent leave, Wessels met with Plaintiff and informed Plaintiff that she was "worried that Plaintiff would 'abuse' her time off."  Id. ¶ 42.  After Plaintiff responded to Wessels that she was entitled to take leave intermittently, Wessels allegedly rolled her eyes at Plaintiff.  Id. ¶ 44.  Plaintiff speculated that Wessels was "clearly outraged" and "it was clear that she despised [Plaintiff] for taking intermittent leave," but again does not provide support.  Id. ¶¶ 44-45.  Plaintiff admits that she was permitted to take the entire 16 weeks of leave, including 6 weeks on an intermittent basis.  Id. ¶ 45.

Between April and May 2020, BSCH asked its employees to work remotely due to the COVID-19 pandemic.  Id. ¶ 58.  During this time, Plaintiff was permitted to continue using her intermittent leave.  Id. ¶ 60.  Plaintiff alleges that, in May 2020, she learned that she and a male co-worker, "Specialist Doe," were being paid less than their straight, non-pregnant, non-Hispanic coworkers (who are female).  Id. ¶¶ 61-62.  Plaintiff claims she made $17 per hour, male coworker

Specialist Doe made $18 per hour, female coworker Specialist Paganetti made $21 per hour, and female Team Leader Bullock made $25 per hour.  Id. ¶ 14, 64.  Plaintiff and Doe allegedly complained about their wages to Wessels on an unidentified date, and Wessels suggested Plaintiff approach her union representative.  Id. ¶¶ 65, 68.  Plaintiff alleges that Wessels told Plaintiff: "You don't need more money since you can afford to take your children to the water park."  Id. ¶ 68.  Plaintiff appears to attribute this alleged remark to Plaintiff being a "woman of color."  Id. ¶ 69.[3]  Plaintiff asserts that, following a meeting with herself, Doe, the union representative, HR, and a representative from BSCH's finance department, her (and Doe's) pay were increased to $20 per hour.  Id. ¶¶ 70, 74.  Plaintiff alleges the representative from BSCH's finance department told Plaintiff she "should be appreciative for their compensation rate."  Id. ¶ 72.

Plaintiff next alleges that, on an unidentified date, Wessels wrote her up for "common errors."  Id. ¶ 77.  Plaintiff asserts she spoke to her union and that a meeting was held between Plaintiff, her union representative, Wessels, and another supervisor.  Id. ¶¶ 79, 83.  At the meeting, Wessels allegedly told Plaintiff that the writeup was "educational," and Plaintiff refused to sign the document.  Id. ¶¶ 84-85.  Plaintiff alleges that, in late June 2020, Wessels approved three employees to take July 4 off but did not approve Plaintiff to do so.  Id. ¶¶ 88-90.  Plaintiff alleges that Wessels had approached Team Leader Bullock and Specialist Paganetti to ask if they wanted the day off, but that Plaintiff had to ask Wessels over email.  Id. ¶¶ 89-90.  Wessels denied Plaintiff's request because two employees needed to be in the office.  Id. ¶ 91.  Plaintiff allegedly contacted her union regarding Paganetti receiving July 4 off—which she states was Paganetti's seventh consecutive day off—but Plaintiff not receiving the day off.  Id. ¶¶ 92-93.

---

[3] The Amended Complaint does not assert claims for discrimination on the basis of color.  See generally id.

Plaintiff claims that, in early August 2020, she requested to take a day off using PTO, and that Wessels denied the request.  Id. ¶ 94-95.  Plaintiff alleges that Wessels told Plaintiff that she denied the request because it would be Plaintiff's seventh consecutive day off.  Id. ¶ 96.  Plaintiff alleges that she contacted her union regarding Wessels' denial of the day off for PTO, and that Wessels asked the union representative, "what is the reason for a request if I can't deny it?" and shut the door in the representative's face.  Id. ¶¶ 98-100.

In December 2020, Wessels allegedly screamed at Plaintiff and Doe.  Id. ¶ 101.  Plaintiff alleges that, on unidentified dates, Wessels reprimanded Plaintiff for being late or for requesting to work from home because of a snow storm.  Id. ¶ 102.  Plaintiff alleges that Wessels required Plaintiff to come into the office and arrive on time regardless of snow conditions, but that Wessels permitted Paganetti to arrive late during snowstorms.  Id. ¶ 102.

Plaintiff alleges that, on December 28, 2020, she told Wessels that she was pregnant for the second time and requested time off for a doctor's appointment, to which Wessels responded "OK."  Id. ¶¶ 103-105.

Plaintiff next claims that, on January 8, 2021, her father tested positive for COVID-19.  Id. ¶ 108.  Plaintiff asserts she informed Wessels on an unidentified date that her father had tested positive for COVID-19 and that she had last seen her father on January 7, 2021.  Id. ¶ 108.  Allegedly, Wessels advised Plaintiff to be tested for COVID-19 on an unidentified date, Plaintiff was tested on an unidentified date, and Plaintiff tested negative on January 11, 2021.  Id. ¶¶ 111, 117-118.  Plaintiff alleges that, in an unspecified amount of time between Wessels advising Plaintiff to get tested and when Plaintiff tested negative, Plaintiff requested to work from home because her doctor had allegedly advised her to quarantine.  Id. ¶¶ 112-115.  Plaintiff asserts

although Wessels had indicated she would ask BSCH's leave administration about the request to work from home, as of "early in the day" on January 11, Wessels had not done so.  Id. ¶ 117.

Upon Plaintiff's negative test result, Wessels allegedly denied Plaintiff's request to work from home.  Id. ¶ 119.  Plaintiff allegedly emailed Wessels' supervisor on the same day regarding the request to work from home, but did not receive a response.  Id. ¶ 122.  On January 12, 2021, Plaintiff again tested negative for COVID-19.  Id. ¶ 123.  Plaintiff alleges that she separately reached out to two individuals HR who confirmed Plaintiff was required to come in to the office.  Id. ¶¶ 124-125. Plaintiff did not come to work as instructed between January 8 to 15, 2021.  Id. ¶ 124; see id. ¶¶ 108-24.  As a result, her employment was terminated.  Id. ¶ 128.

## STANDARD OF REVIEW

On a motion to dismiss under FED. R. CIV. P. 12(b)(6), a Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  See Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist LEXIS 26143, at *4-5 (S.D.N.Y. Nov. 1, 2005) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  As a result, legal conclusions "must be supported by factual allegations."  Id. at 679.

Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly,

550 U.S. at 555 (citation omitted).  Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief."  Id. at 557 (quotation marks omitted).  Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Id. at 570; Iqbal, 556 U.S. at 680.

## ARGUMENT

### POINT I

### PLAINTIFF'S SHRL DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

Plaintiff asserts gender, disability, and pregnancy discrimination claims under the SHRL.  For myriad reasons, Plaintiff's allegations are insufficient to establish a claim upon which can be granted.  The claims should be dismissed with prejudice.[4]

**A.  Plaintiff Fails To Plausibly Allege Discrimination**

**i.  Standard Of Review**

In order to state a discrimination claim under the SHRL, Plaintiff must plausibly allege, inter alia, that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  Shankar v. Ankura Consulting Corp., No. 20-CV-07463 (ALC), 2021 U.S. Dist. LEXIS 151098, at *1 (S.D.N.Y. Aug. 11, 2021) (citations omitted).[5]

---

[4] Discrimination claims under the SHRL carry a three-year statute of limitations.  See, e.g., Smith v. Johnson, 636 F. App'x 34, 36 (2d Cir. 2016).  For limitations purposes, this action was commenced on January 12, 2023.  See Summons with Notice, Dkt. No. 1-1.  Thus, any alleged discrimination occurring prior to January 12, 2020 is time-barred under the statute.  See Santana v. Mt. Vernon City Sch. Dist., No. 20-cv-3212 (NSR), 2021 U.S. Dist. LEXIS 189907, at *40 (S.D.N.Y. Sept. 30, 2021); Thus, the allegations regarding Plaintiff's first pregnancy—including her request for leave, the alleged December 2019 meeting with Wessels, and the allegations that Wessels and coworkers ignored or ostracized Plaintiff—appearing at paragraphs 15-57 of the Amended Complaint, are time-barred.

[5] In 2019, the New York legislature amended the SHRL to provide that it be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights law, including those with provisions worded comparably to the provisions of this article, have been so construed."  N.Y. Exec. L. § 300. This standard applies solely to alleged conduct postdating the amendment's effective date of August 12, 2019.  See Kraiem v. JonesTrading Inst. Servs. LLC, 572 F. Supp. 3d 53, 60 n. 6 (S.D.N.Y. 2021).  Thus, here, the pre-amendment standard would apply to conduct pre-dating August 12, 2019—all of which is time-barred, in any case (supra footnote

### ii.  No Inference Of Discrimination Via Direct Evidence

The Amended Complaint fails to establish even a minimal inference that: (1) Plaintiff suffered an adverse employment action other than her termination; or (2) that her termination was the product of discriminatory animus on the basis of her gender, pregnancy, or purported disability.  To the contrary, the face of the Amended Complaint shows that Plaintiff received and took all the leave to which she was entitled, and that her termination was caused by her failure to come to work despite testing negative for COVID-19.

The Amended Complaint does not allege *any* discriminatory comments conceivably supporting an inference of gender, pregnancy, or purported disability-related discrimination.  The relevant comments Plaintiff alleges are: (1) that Wessels replied "OK" to learning Plaintiff was pregnant (in February 2019, which is untimely, and in December 2020, which is timely) (Amended Complaint ¶¶ 21, 105); (2) that Wessels said, during a December 2019 meeting with Plaintiff, that Wessels was worried Plaintiff would "abuse" her time off (which is untimely) (id. ¶ 42); and (3) that Wessels said "you don't need more money since you can afford to take your children to the water park" in May 2020 (id. ¶ 68).  None of these comments provide support for the proposition that Wessels harbored discriminatory animus against Plaintiff due to her gender, pregnancy, or purported disability.  See Thompson v. ABVI Goodwill Servs., 531 F. App'x 160, 162 (2d Cir. 2013) (affirming grant of motion to dismiss where comment "does not reference age or otherwise raise a reasonable inference of discriminatory animus").  Further, none of the comments are alleged to have any connection to Plaintiff's termination.  See, e.g., Williams v. Westchester Med. Ctr. Health Network, No. 21-CV-3746 (KMK), 2022 U.S. Dist. LEXIS

---

4)—and the post-amendment standard would apply to all non-time-barred allegations occurring after August 12, 2019. See Doran v. Ives, No. 15-cv-7217 (PKC), 2021 U.S. Dist. LEXIS 79599, at *17 n. 4 (S.D.N.Y. Apr. 26, 2021). It is clear that nothing in the amendment would change the requirement that Plaintiff allege a minimal inference of discriminatory intent on the basis of gender, disability, or pregnancy.  Here, she has not done so.

175332, at *34 (S.D.N.Y. Sept. 27, 2022) (granting motion to dismiss because "there remains no connection between this comment and the adverse action that befell Plaintiff"). Thus, the allegations do not plausibly support an inference of discrimination.

Furthermore, vague complaints that coworkers ignored her or that Wessels rolled her eyes toward Plaintiff are not sufficient to establish discrimination. They are, first, unconnected to Plaintiff's membership in a protected class, and, second, far too trivial to plausibly support discrimination. See Romano v. A360 Media, LLC, No. 20-cv-8988 (LTS), 2023 U.S. Dist. LEXIS 10355, at *21-22 (S.D.N.Y. Jan. 20, 2023) (motion to dismiss SHRL discrimination claims granted where Plaintiff complained that defendants were "ostracizing her in the workplace, screaming at her in front of coworkers, [and] failing to regularly communicating regarding work issues," finding that plaintiff "asserts, conclusorily, that [defendant] took these actions because of Plaintiff's disability…. Plaintiff has not alleged facts sufficient to support an inference of disability-based discrimination); Isakov v. HASC Ctr., Inc., No. 17-CV-5775 (BMC), 2018 U.S. Dist. LEXIS 31624, at *17, 24 (E.D.N.Y. Feb. 27, 2018) (being ignored not actionable). In addition, complaints that Plaintiff did not receive July 4, 2020 off and had a request for *one day* of PTO denied are simply not significant enough to be actionable. See Chong v. City of New York, No. 161606/2018, 2020 N.Y. Misc. LEXIS 2667, at *6-7 (Sup. Ct. N.Y. Cty. June 11, 2020) ("Plaintiff's allegations about being denied a vacation request in March 2018 do not state a claim under the NYSHRL. Plaintiff does not allege any connection between this denial and impermissible discrimination, a hostile work environment, or retaliation."); see also Batchelor v. City of New York, No. 11-CV-2058 (MKB) (VMS), 2014 U.S. Dist. LEXIS 46921, at *53-55 (E.D.N.Y. Feb. 16, 2014) (same). Finally, Plaintiff acknowledges that the "write ups" she received were educational in nature, and therefore cannot be considered adverse employment actions, much less ones arising under an

inference of impermissible discrimination. Amended Complaint ¶¶ 82-87. Therefore, these allegations should be dismissed.

### iii.  No Inference Of Discrimination Via Disparate Treatment

Plaintiff also fails to plausibly allege an inference of discrimination via disparate treatment.  In order to plausibly allege differential treatment based on comparators, a complaint must allege that the individuals with whom Plaintiff seeks to compare herself are outside her protected class.  See, e.g., Murtha v. N.Y.S. Gaming Comm'n, No. 17 Civ. 10040 (NSR), 2019 U.S. Dist. LEXIS 159783, at *16 (S.D.N.Y. Sept. 17, 2019) (citation omitted). Here, Plaintiff appears to contend that Specialist Paganetti was given preferential treatment, and may be contending that Team Leader Bullock and Wessels were treated more favorably.  However, all three of these individuals are female, and Plaintiff does not allege with specificity that any of them were not purportedly disabled or pregnant.  As a result, Plaintiff has not identified comparators outside her protected class who were treated more favorably, so she has not plausibly alleged disparate treatment via comparators.  See Wellington v. Spencer-Edwards, No. 16 Civ. 6238 (AT) (JLC), 2017 U.S. Dist. LEXIS 162788, at *21 (S.D.N.Y. Sept. 28, 2018) ("[a] plaintiff alleging discrimination 'cannot establish that she was terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class.'") (citations omitted).

Regardless, in order to establish comparators, Plaintiff must allege that the individuals with whom she seeks to compare herself are "similarly situated" to her in "all material respects." See, e.g., Cooper v. Templeton, No. 21-CV-4692 (RA), 2022 U.S. Dist. LEXIS 170820, at *10 (S.D.N.Y. Sept. 21, 2022), citing Graham v. LIRR, 230 F.3d 34 (2d Cir. 2000).  This requires "a reasonably close resemblance of facts and circumstances," and allegations that Plaintiff and the purported comparators were "subject to the same workplace standards and [] engaged in

conduct of comparable seriousness." Id., citing Graham, 230 F.3d 34 (cleaned up).  Plaintiff may

do so via allegations that "[s]he was employed in the same department, subject to the same

supervisors, or of a similar experience level as his comparators."  Williams v. N.Y.S. Unified Court

Sys., No. 16-CV-2061 (VSB), 2017 U.S. Dist. LEXIS 162736, at *30 (S.D.N.Y. Sept. 30, 2017).

Here, Plaintiff does not allege that Paganetti, Bullock, Wessels or any other

purported comparator was similarly situated to her at all, let alone in "all material respects."  First,

other than conclusory allegations, there is no indication that Plaintiff had the same job duties,

department, supervisors, or experience level as these individuals.  Indeed, Bullock appears to have

been a "Team Leader" and Wessels a supervisor, rendering them facially incomparable to Plaintiff.

See Cooper, 2022 U.S. Dist. LEXIS 170820, at *10-11 (motion to dismiss granted where purported

comparators were not alleged to be "similarly situated in terms of position, seniority, job

responsibilities, business unit, performance, length of experience, or even geography"); Williams,

2017 U.S. Dist. LEXIS 162736, at *30-31 ("[a]lthough Plaintiff identifies his comparators by name

and alleges that they are 'employees,' [he] does not allege any facts showing how he was similarly

situated to these employees.  For example, [he] does not allege that he was employed in the same

department, subject to the same supervisors, or of a similar experience level as his comparators").

Second, none of these individuals is alleged to have engaged in conduct of

comparable seriousness to Plaintiff but not terminated.  Plaintiff refused to come into work for an

entire week and was terminated.  Even if Plaintiff contends her termination was unfair—or

summarily labels it discriminatory—Plaintiff does not claim that other employees outside of her

protected classes engaged in similar misconduct but were not terminated.  This, too, defeats any

attempt to establish discrimination via comparators.  See Cooper, 2022 U.S. Dist. LEXIS 170820,

at *12 (claims dismissed where plaintiff did not allege comparators engaged in conduct of

comparable seriousness but went undisciplined); <u>Shein v. N.Y.C. Dep't of Educ.</u>, No. 15cv4236 (DLC), 2016 U.S. Dist. LEXIS 20015, at *16-17 (S.D.N.Y. Feb. 18, 2016) (same).

### iv.  No Failure to Accommodate Disability or Pregnancy

In order to assert a <u>prima</u> <u>facie</u> case of failure to accommodate under the SHRL, a plaintiff must allege that: "(1) plaintiff is a person with a disability within the meaning of the relevant statute; (2) plaintiff's employer is covered by the statute and had notice of the plaintiff's disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job; and (4) the employer refused to make such accommodations." <u>Zuckerman v. GW Acquisition LLC</u>, 20-cv-8742, 2021 U.S. Dist. LEXIS 178873, at *23 (S.D.N.Y. Sept. 20, 2021).

Here, Plaintiff's Amended Complaint does not adequately plead she suffered from a disability within the meaning of the SHRL. Rather, Plaintiff expressly acknowledges that she tested negative for COVID-19 on multiple occasions, but was supposedly quarantined. Amended Complaint ¶¶ 108-128. Additionally, while Plaintiff claims she would have been able to perform her tasks remotely, her allegations are conclusory. The fact that she worked remotely during the early stages of the pandemic is of no moment. <u>See</u> <u>Zuckerman</u>, 2021 U.S. Dist. LEXIS 178873, at n. 16 (granting Rule 12 dismissal of failure to accommodate claim, noting that plaintiff had not adequately alleged she suffered from a qualifying disability and explaining that "[p]laintiff, like millions of other employees, was initially allowed to work from home because of the COVID-19 pandemic; [p]laintiff alleges no facts from which the Court could infer that she could perform the essential functions of her job from home after her colleagues and other work contacts returned to their offices."). Therefore, this claim must be dismissed.

Similarly, in the failure to accommodate pregnancy context, a plaintiff must sufficiently plead "(1) that she belongs to the protected class, (2) that she sought accommodation,

(3) that the employer did not accommodate her, and (4) that the employer did accommodate others similar in their ability or inability to work." Xiang v. Eagle Enterprises, LLC, No. 19-CV-1752, 2020 U.S. Dist. LEXIS 7909 (S.D.N.Y. Jan. 16, 2020). Here, the Amended Complaint does not contain any facts concerning, much less, establishing, the fourth prong of the analysis. She does not assert any other similarly-situated employees were able to work remotely at this time, squarely defeating this claim. See Reyes v. Westchester Cty. Health Care Corp., 21-0410, 2021 U.S. App. LEXIS 31915, at *6 (2d Cir. Oct. 25, 2021) ("[w]hile Reyes complains of her employer's failure to accommodate her pregnancy, she did not allege that her employer was more willing to accommodate other employees who were similarly physically limited.").

**B.  Plaintiff Fails To Plausibly Allege A Hostile Work Environment**

Initially, the same failure to establish an inference of discrimination as set forth above is equally fatal to hostile work environment claims.  See Freud v. N.Y.C. Dep't of Educ., No. 21-cv-2281 (MKV), 2022 U.S Dist. LEXIS 54353, at *31-33 (S.D.N.Y. Mar. 25, 2022) ("Plaintiff's scattershot allegations of inconveniences identified previously with respect to his religious discrimination claims similarly fail to make out a claim for hostile work environment for the same reason: the identified acts did not alter the conditions of [his] employment"); Richards v. Dep't of Educ. of N.Y., No. 21-cv-338 (LJL), 2022 U.S. Dist. LEXIS 19674, at *46, *65 (S.D.N.Y. Feb. 2, 2022) (finding plaintiff's hostile work environment claim failed under applicable standards because she failed to plead she "faced the alleged workplace misconduct due to her protected characteristics). Plaintiff's failure to connect anything that allegedly happened to her with her gender or disability renders a hostile work environment based on those characteristics impossible.

Regardless, a hostile work environment cannot be predicated merely upon "petty slights and trivial inconveniences," such as those alleged here.  See N.Y. Exec. L. § 296(h); e.g. Brown v. N.Y.C. Dep't of Educ., No. 157642/2020, 2023 N.Y. Misc. LEXIS 173, at *29-30 (Sup.

Ct. N.Y. Cty. Jan. 12, 2023).  At most, apart from Plaintiff's termination as addressed above, Plaintiff alleges that coworkers acted rudely toward her, that Wessels denied her two days off in mid-2020, and that Wessels tried to issue her one writeup.  To say nothing of the fact that these actions are only connected to Plaintiff's protected characteristics via Plaintiff's speculation and conclusory assertions, these acts are too trivial to support a hostile work environment claim.  Pease v. City of New York, No. 161501/2021, 2022 N.Y. Misc. LEXIS 6004, at *29 (Sup. Ct. N.Y. Cty. Aug. 12, 2022) (insufficient facts pled to establish anything more than petty slights or trivial inconveniences);  Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 417 (S.D.N.Y. 2017) ("Plaintiff's complaints that [defendant] was overbearing and rude towards her are, at most, 'petty slights and trivial inconveniences' that cannot create a hostile work environment, particularly when there is no evidence of a discriminatory motive") (citations omitted).

### C.  The Amended Complaint Does Not State A Claim Against Wessels

"Under the NYSHRL, a corporate employee, even if she holds a supervisory title, is not subject to suit for discrimination or hostile work environment under the NYSHRL."[6] Plaintiff's aiding-and-abetting claim against Wessels is meritless given Plaintiff has failed to plausibly allege an underlying violation of the SHRL.  See, e.g., Boonmalert v. City of New York, 721 F. App'x 29, 34 (2d Cir. 2018) ("Since there is no underlying NYSHRL or NYCHRL violation, there was no aiding or abetting of acts forbidden by the NYSHRL and NYCHRL.") (citation omitted).  In any event, Wessels herself is the alleged discriminator in this case, and an individual is legally incapable of aiding and abetting her own conduct.  Id.

---

[6] Some Courts have found individual liability exists under the SHRL where an employee has "an ownership interest or any power to do more than carry out personnel decisions made by others."  Ramos v. Metro-North, No. 153742/18, 2020 N.Y. Misc. LEXIS 1666, at *37 (Sup. Ct. N.Y. Cty. Apr. 3, 2020).  However, here, as in Ramos, the Amended Complaint does not allege that Wessels has an ownership interest in BSCH or has the power to unilaterally dismiss employees.  Id.; see Trovato v. Air Express Int'l, 238 A.D.2d 333, 334 (2d Dep't 1997) ("There is no evidence in this case that the individual defendants had any ownership interest in the corporate defendant or any authority to make personnel decisions.").

Further, Plaintiff's NYCHRL claims are sanctionable because none of the alleged acts detailed in the Amended Complaint occurred in New York City. "Both New York State law and the New York City Administrative Code limit the applicability of the NYCHRL to acts occurring within the boundaries of New York City." Germano v. Cornell Univ., No. 03 Civ. 9766 (DAB), 2005 U.S. Dist. LEXIS 17759, at *12 (S.D.N.Y. Aug. 17, 2005). Here, all of Plaintiff's factual allegations occurred at Plaintiffs place of employment, which is unequivocally in Port Jervis, New York. Amended Complaint ¶ 9.

Accordingly, the Amended Complaint does not—and cannot be amended to—state a claim against Defendant Wessels upon which relief can be granted.

## POINT II

### PLAINTIFF'S NYEPA CLAIM SHOULD BE DISMISSED.

#### A. Plaintiff Fails To Plausibly Allege Unequal Pay

To state an NYEPA claim, the Amended Complaint must allege "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." Tulino v. City of New York, No. 15-CV-7106 (JMF), 2018 U.S. Dist. LEXIS 51391, at *7 (S.D.N.Y. Mar. 27, 2018).  "At the pleading stage . . . a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal." Brightman v. Phys. Aff. Grp. of N.Y., P.C., No. 20cv4290 (DLC), 2021 U.S. Dist. LEXIS 95327, at *23-24 (S.D.N.Y. May 19, 2021).[7]

---

[7] NYEPA claims are analyzed under the same standards applicable to the federal EPA.  E.g. Durand v. Excelsior Care Grp. LLC, No. 19-CV-2810 (KAM), 2020 U.S. Dist. LEXIS 231591, at *10 (E.D.N.Y. Dec. 9, 2020).

Plaintiff's NYEPA claim fails for two principal reasons.  First, the individuals who Plaintiff identifies as having been paid more than her and Specialist Doe—Specialist Paganetti and Team Leader Bullock—are both female.  See Becton v. Cabs Home Attendant Servs., No. 07-CV-00678 (CBA), 2008 U.S. Dist. LEXIS 25034, at *11 (E.D.N.Y. Mar. 28, 2008) ("[t]he only pay disparity she alleges appears to be between herself and an employee of the same gender. As Becton has failed to allege that her former employer paid different wages to employees of the opposite sex, she fails to state a claim under the Equal Pay Act.").  The only allegation comparing Plaintiff's pay to a male employee is that, for a period prior to mid-2020 when both of their salaries were increased to $20 per hour, Specialist Doe allegedly made *one dollar* per hour more than she did.  Amended Complaint ¶ 15.  However, this allegation is alleged "on information and belief" only, without providing any basis for the belief.  Id.  Such conclusory allegations are not entitled to the presumption of truth on a motion to dismiss.  See, e.g., Rose v. Goldman, Sachs & Co., 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) ("Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim.").

Second, and dispositively, the Amended Complaint is bereft of allegations plausibly supporting that Specialist Doe and Plaintiff had "substantially equal" jobs.  Again, the only allegation on this point is utterly conclusory: "Upon information and belief, Plaintiff's coworker, Authorization Specialist John Doe ('Specialist Doe')…ha[d] the same experience and background in the field as Plaintiff."  Amended Complaint ¶ 16.  As noted, such conclusory "information and belief" allegations—which merely recite elements of a claim rather than alleging facts to support those elements—are not presumed true even at the pleadings stage.  See Rose, 163 F. Supp. 2d at 243. In any event, courts have made clear that Plaintiff must do more than merely allege that she and a male employees had the same job title; rather, a plaintiff must plead specific

allegations about the male and female groups that support that the jobs performed were substantially equal.  See Khwaja v. Jobs, No. 19-cv-07070 (JPC), 2021 U.S. Dist. LEXIS 65884, at *11 (S.D.N.Y. Mar. 26, 2021) ("a successful EPA claim depends on the comparison of *actual job content*; broad generalizations drawn from job title, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice.") (quotations omitted).[8]

### POINT III

**PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED.[9]**

**A.  Plaintiff Fails To State A Retaliation Claim Under the SHRL**

In order to state a viable claim for retaliation under the SHRL, Plaintiff must allege: "(1) she engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered a materially adverse action, and (4) there was a causal connection between the protected activity and that adverse action."  Antoine v. State Univ. of N.Y. Downstate Med. Ctr., No. 21-443-cv, 2021 U.S. App. LEXIS 37890, at *2 (2d Cir. Dec. 22, 2021) (citation omitted).  Here at the pleadings stage, Plaintiff has failed to meet the first, third, and fourth elements.

**i.   No Protected Activity**

Only complaints of discrimination constitute protected activity under the SHRL. See, e.g., Grant v. Abbott House, No. 14-cv-8703 (NSR), 2016 U.S. Dist. LEXIS 21195, at *25 (S.D.N.Y. Feb. 22, 2016), citing Wright v. Monroe Cmty. Hosp., 493 F. App'x 233 (2d Cir. 2012).

---

[8] As noted with respect to the SHRL, Wessels is not subject to liability under the NYLL.  Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984) (applying doctrine to NYLL § 194); e.g. D'Amico v. Arnold Chevrolet, LLC, 31 Misc. 3d 1201(A) (Sup. Ct. Suff. Cty. Mar. 22, 2011); Torres v. Vittoria Corp., No. 114667-2007, 2008 N.Y. Misc. LEXIS 8800, at *24-25 (Sup. Ct. N.Y. Cty. July 21, 2008).

[9] As noted in footnote 4, supra, SHRL claims occurring prior to January 12, 2020, are time-barred under the statute. Thus, to the extent Plaintiff's retaliation claims are predicated upon facts predating January 12, 2020, those allegations time-barred.

That is, for the underlying complaint to qualify as activity protected by the statute, the facts must plausibly support that the employee was making a bona fide effort to complain of statutorily-prohibited discrimination.  See, e.g., Buchanan v. City of New York, 556 F. Supp. 3d 346, 365-66 (S.D.N.Y. 2021) (protected activity under the SHRL requires that plaintiff "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute.").

Here, Plaintiff's alleged May 2020 complaint to Wessels regarding her pay was not protected activity.  The Amended Complaint itself characterizes this incident as Plaintiff and Doe—a *male* employee—approaching Wessels and complaining "about being underpaid." Amended Complaint ¶ 65.  Following that incident, Plaintiff alleges she and Doe had a meeting with a finance representative for BSCH who ultimately raised their pay to $20 per hour.  Id. ¶¶ 70-74.  At no point during these alleged interactions does Plaintiff allege that she raised the subject of *gender-based* pay disparity; indeed, the fact that she and a male employee were raising this concern together defies the conclusion that this complaint had anything to do with unequal pay on account of gender.  Thus, as Plaintiff did not engage in protected activity, there can be no retaliation claim.  See Sletten v. LiquidHub, Inc., No. 13 Civ. 1146 (NRB), 2014 U.S. Dist. LEXIS 94697, at *14 (S.D.N.Y. July 10, 2014) ("Because plaintiff did not link his pay cut to his sexual orientation when lodging his grievance, [plaintiff] did not engage in a protected activity.").

Further, although it does not seem that Plaintiff is contending that her two complaints to her union regarding two days off in mid-2020 are "protected activities" under the SHRL, Defendants note that these are also not protected activities.  Amended Complaint ¶¶ 93, 98. Moreover, with respect to the July 4 holiday, Plaintiff alleges she complained to her union that Wessels had given Paganetti July 4 off but did not give Plaintiff that day off, and there is no indication that Wessels ever became aware of that complaint.  Id. ¶ 93.  With respect to the single

day of PTO, Plaintiff alleges she complained to her union that Paganetti was permitted to take a day of PTO when it would be her seventh in a row, but Plaintiff was not. Id. ¶ 98. Plaintiff does *not* allege either of these complaints regarded discrimination. Indeed, Specialist Paganetti is also female, again defying any interpretation that Plaintiff's union complaints alleged gender-based discrimination. There is also no indication Plaintiff was claiming she was denied these two days because she had been pregnant. Thus, these are also not protected activities. See Small v. N.Y.C. Dep't of Educ., No. 21-cv-1527 (GHW), 2023 U.S. Dist. LEXIS 2099, at *31 (S.D.N.Y. Jan. 5, 2023) ("union grievances that do not complain of discrimination do not constitute a protected activity.") (quotations omitted).

### ii.   No Causal Connection

Assuming Plaintiff did engage in protected activity, the Amended Complaint does not plausibly support a causal connection between any activity and any other adverse action, including her eventual termination. Indeed, the only allegations addressing causality are entirely speculative and conclusory: "On information and belief, Defendants pre-textually terminated Plaintiff … in retaliation for seeking equal pay…" and "In retaliation, Defendants subjected Plaintiff to a series of adverse employment actions including, but not limited to, preventing Plaintiff from taking time off and terminating Plaintiff's employment." Amended Complaint ¶¶ 132, 151. Conclusory allegations of retaliation are not permissible under Twombly and Iqbal. See Henry v. NYC Health & Hosps. Corp., 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (allegation that "Upon information and belief, the manufacturing of charges against [plaintiff] was in retaliation for her complaining about Defendant['s] conduct" is conclusory, "and thus fails to satisfy the Iqbal/Twombly pleading standard.").

The purported protected activities are also far too remote in time for Plaintiff to establish causality via temporal proximity to any adverse action. As pertinent herein, as compared

to Plaintiff's January 2021 termination, Plaintiff's complaint regarding her pay occurred eight months before, her complaint regarding July 4th occurred six months before, and her complaint regarding taking one day of PTO occurred five months before.  See Amended Complaint ¶¶ 62-63, 93, 97, 129.  In the Second Circuit, three months is on the outer edge of what can be considered temporally proximate, and this Court routinely declines to find temporal proximity for similar gaps in time.  See, e.g., Atkinson v. Prabhjot Singh, No. 19-CV-3779 (VSB), 2022 U.S. Dist. LEXIS 8203, at *35-36 (S.D.N.Y. Jan. 14, 2022) (five-month gap insufficient); Wilson v. JPMorgan Chase Bank, N.A., No. 20-CV-4558 (JMF), 2021 U.S. Dist. LEXIS 45132, at *23-24 (S.D.N.Y. Mar. 10, 2021) (noting that "two to three months is too long to support an inference of causation, even under the NYCHRL," and finding four months to be insufficient). Thus, even assuming these events qualified as protected activities, there is no basis on which to infer causality.

### B.  Plaintiff Fails To State A Retaliation Claim Under The NYEPA

#### i.  Untimeliness

The NYEPA, Labor Law § 194, does not contain a provision prohibiting retaliation. Assuming such a claim exists, retaliation claims predicated on protected activities concerning violations of the NYLL, including the NYEPA, would be brought under NYLL § 215, the anti-retaliation provision of the NYLL.  See Khwaja v. Jobs to Move Am., No. 19-cv-07070 (GBD), 2019 U.S. Dist. LEXIS 197982, at *14-15, *23-24 (S.D.N.Y. Nov. 13, 2019) (adopted 2020 U.S. Dist. LEXIS 70425).  Such claims carry a two-year statute of limitations.  NYLL § 215(2).  Thus, any NYEPA retaliation claims are untimely in the same manner as the FMLA retaliation claims.

#### ii.  No Protected Activity or Causation

Under either NYLL § 215 this statute or the federal EPA, to state a viable claim for retaliation, plaintiff must show: (1) participation in protected activity known to the defendant, (2) an employment action disadvantaging the plaintiff, and (3) a causal connection between the

protected activity and the adverse employment action.  <u>Khwaja</u>, 2019 U.S. Dist. LEXIS 197982, at *14-15, *23-24 citing <u>Mullins v. City of New York</u>, 626 F.3d 47 (2d Cir. 2020).

        Plaintiff's NYEPA retaliation claim fails for the same reason as the SHRL retaliation claim; namely, that Plaintiff did not engage in activity protected by the statute.  As discussed, the Amended Complaint does not allege that Plaintiff's single complaint in May 2020 regarding her pay was a complaint that she was being paid less account of her gender.  This defeats the claim.  <u>See</u> <u>supra</u> Point III(A)(ii); <u>Khwaja</u>, 2019 U.S. Dist. LEXIS 197982, at *23-24. Even so, as noted above, there is no causal connection alleged between the pay complaint in May 2020 and any other adverse action, including Plaintiff's termination eight months later in January 2021. This, too, defeats the claim.  <u>See</u> <u>supra</u> Point III(A)(ii); <u>see</u> <u>also</u> <u>Fischman v. Mitsubishi Chem. Holdings Am., Inc.</u>, No. 18-CV-8188 (JMF), 2019 U.S. Dist. LEXIS 115616, at *20-21 (S.D.N.Y. July 11, 2019).

### C.  Plaintiff Fails To State A Retaliation Claim Under the FMLA

#### i.  Untimeliness

        FMLA claims carry a two-year limitations period.  29 U.S.C. § 2617(c)(1).[10]  As this case was commenced for limitations purposes on January 12, 2023, claims accruing prior to January 12, 2021 are untimely.  Thus, claims that Plaintiff was retaliated against by not receiving a day off from work for July 4, 2020 and one day of PTO in August 2020 are time-barred.

---

[10] The Amended Complaint does not plausibly allege willfulness or any facts that would imply a three-year limitations period.  <u>See</u> 29 U.S.C. § 2617(c)(2).  The only such allegation in the Amended Complaint is conclusory: "Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law."  Amended Complaint ¶ 131.  This is not sufficient to invoke a three-year limitations period.  <u>See</u> <u>Tsekhanskaya v. City of New York</u>, No. 18-CV-72723 (KAM), 2020 U.S. Dist. LEXIS 179477, at *22 (E.D.N.Y. Sept. 29, 2020) ("Plaintiff has alleged no plausible facts supporting the court's application of the three-year statute of limitations or willful violations of the FMLA. (Am. Compl. at 4, 22, 59 (stating, in conclusory fashion, that FMLA violations were 'willful').)").

### ii.   No Causal Connection

In order to state a retaliation claim under the FMLA, an employee must allege that (1) she exercised rights protected under the FMLA, (2) she was qualified for his position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004).  FMLA retaliation claims "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer."  Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017).  Plaintiff must allege that the exercise of FMLA rights was a "motivating factor" in the adverse employment action.  Id.

As with the SHRL and NYEPA retaliation claims, the Amended Complaint does not plausibly allege a causal connection between a request for FMLA leave and any adverse action, inclusive of Plaintiff's termination.  Plaintiff requested leave in February 2019 and was terminated in January 2021—a nearly two-year period.  This refutes any inference of causation based on timing.  See Desiderio v. Hudson Techs., Inc., No. 22 Civ. 541 (ER), 2023 U.S. Dist. LEXIS 6860, at *13-14 (S.D.N.Y. Jan. 13, 2023) (FMLA retaliation claim dismissed based on three-month gap in time); Daly v. Westchester Cty. Bd. of Legislators, No. 19-CV-04642 (PMH), 2021 U.S. Dist. LEXIS 12336, at *30-31 (S.D.N.Y. Jan. 22, 2021) (between two and three months).

### D.  The Amended Complaint Does Not State A Claim Against Wessels

As noted, Wessels is not subject to suit as an individual under the SHRL or NYLL. Supra Point I(C).  Thus, in addition to all of the arguments noted above, the SHRL and NYEPA discrimination claims against Wessels must be dismissed.

## POINT IV

## PLAINTIFF'S FMLA INTERFERENCE CLAIM SHOULD BE DISMISSED.

### A.  Standard Of Review

In order to establish a viable claim for interference under the FMLA, an employee must plausibly allege: "(1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016).  Here, Plaintiff's claim founders on the final three elements.

### B.  Plaintiff Was Not Denied Benefits Under the FMLA

Most dispositively, Plaintiff's claim fails because she admits Defendants did *not* deny her first request for leave, and that she received all medical leave to which she was entitled. See Daly, 2021 U.S. Dist. LEXIS 12336, at *30 (motion to dismiss granted where plaintiff "did not allege that this [FMLA] request was denied; in fact, the leave he requested and took…was granted.  This belies a claim that [defendant] 'interfered' with Plaintiff's FMLA rights…"); Santana v. Weill Cornell Medicine Primary Care, No. 17-CV-7420 (AJN), 2018 U.S. Dist. LEXIS 166687, at *14 (S.D.N.Y. Sept. 27, 2018) ("Plaintiff's amended complaint does not support the allegation that she was denied any benefit under the FMLA, as it seems to suggest that Defendant *did* provide Plaintiff with FMLA benefits.   Accordingly, her interference claim must be dismissed.") (citing Sarno v. Douglas Elliman, 183 F.3d 155 (2d Cir. 1999)).

In light of the fact that Plaintiff was granted all the leave she requested and to which she was entitled under the law in 2019, her allegations that Wessels was displeased with her taking leave are simply not sufficient to establish interference.  See Emmons v. City of N.Y., 715 F. Supp.

2d 394, 418 (E.D.N.Y. 2010); Fukelman v. Delta Air Lines, Inc., No. 18-CV-2 (PKC), 2020 U.S. Dist. LEXIS 66410, at *56 (E.D.N.Y. Apr. 13, 2020) (report and recommendation adopted 2020 U.S. Dist. LEXIS 94455) (FMLA interference claim dismissed because, "although [plaintiff] alleges that [defendant] harassed him about using his FMLA leave, there are no allegations that he was ever prevented from using it.").

Plaintiff's claims pertaining to what transpired in January 2021 are similarly defective. The Amended Complaint does not plead that she sought to take FMLA leave, much less that Defendants denied her the ability to take leave she never requested. Plaintiff's speculative claim that "Defendants terminated Plaintiff before she would need to use FMLA protected leave" is insufficient under the Iqbal/Twombly standard. Therefore, this claim should also be dismissed.

## **CONCLUSION**

The Court should grant the motion to dismiss the Amended Complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 28th Floor
New York, NY 10017
(212) 545-4000

Dated: May 5, 2023          By:     /s/ Daniel D. Schudroff
          New York, NY                    Daniel D. Schudroff, Esq.
                                          Shevonne Greene, Esq.
                                          *Attorneys for Defendants*

4860-5802-1982, v. 1