UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SAMANTHA DEJESUS,              :
             Plaintiff,     :
v.                    :      **OPINION AND ORDER**
                    :
BON SECOURS COMMUNITY HOSPITAL  :     23 CV 806 (VB)
and LYN WESSELS,          :
           Defendants.   :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Samantha DeJesus brings this action against her former employer, defendant

Bon Secours Community Hospital (the "Hospital"), and her former supervisor, defendant Lyn

Wessels asserting violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615,

for retaliation and interference with plaintiff's rights; the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296, for gender, pregnancy, and disability discrimination and

retaliation; and the New York Equal Pay Act ("NYEPA"), N.Y. Lab. Law §§ 194, 215, for unfair

pay practices based on gender and race and retaliation.[1]

      Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(6).  (Doc. #24).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]    Plaintiff originally asserted an aiding and abetting discrimination and retaliation claim under the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-107(6), but plaintiff has withdrawn that claim.  (Doc. #30 ("Pl. Opp.") 23 n.6).  Accordingly, plaintiff's NYCHRL claim (fifth cause of action) is dismissed.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.   Plaintiff's First Pregnancy and Maternity Leave

In June 2017, plaintiff, a Hispanic woman, was hired by the Hospital as an Authorization Specialist in Port Jervis, New York.  In February 2019, plaintiff informed her supervisor, defendant Wessels, she was pregnant and would need maternity leave.  Wessels responded "OK" and referred plaintiff to the Hospital's human resources department.  (Doc. #10 ("Am. Compl.") ¶ 21).  Plaintiff was "shocked and alarmed that Defendant Wessels did not even say congratulations."  (Id.)

According to plaintiff, after she announced her pregnancy, her co-workers—namely, Authorization Specialist Carly Paganetti, Team Leader Kelly Bullock, and Wessels—began to ignore and ostracize plaintiff.  Wessels would greet everyone in the small office space except plaintiff, and plaintiff's co-workers "regularly made comments about how Plaintiff had ruined everyone else's vacations" with her pregnancy leave.  (Am. Compl. ¶ 28).  On August 29, 2019, plaintiff gave birth to her son and took ten consecutive weeks of maternity leave.

II.   Plaintiff's Return to Work

Plaintiff returned to work in early November 2019.  She informed Wessels she would be using the remaining six weeks of her leave as intermittent leave.  Wessels allegedly objected to plaintiff using intermittent leave, but eventually accepted that plaintiff was entitled to this leave.

Plaintiff claims her co-workers complained that it was unfair they were required to cover for plaintiff while she took intermittent leave "just because Plaintiff decided to have children and

they had decided not to have children."  (Am. Compl. ¶ 48).  Specialist Paganetti "turned her back" to plaintiff whenever she tried to discuss work-related matters, making it difficult for plaintiff to complete her tasks.  (Id. ¶ 50).  Wessels openly praised Specialist Paganetti's work and ignored plaintiff's accomplishments.  Plaintiff alleges she "continued to suffer from the hostile work environment" over the next several months.  (Id. ¶ 57).

In April 2020, all employees in plaintiff's department worked remotely due to the COVID-19 pandemic.  In May 2020, all employees returned to the office.  According to plaintiff, upon her return, she discussed her wages with her co-worker Specialist Doe, who is a white gay male.  They "found out that they were making less than their straight, non-pregnant, non-Hispanic co-workers."  (Am. Compl. ¶ 62).  Plaintiff made $17.00 per hour, Specialist Doe made $18.00 per hour, Specialist Paganetti made $21.00 per hour, and Team Leader Bullock made $25.00 per hour.  Plaintiff and Specialist Doe complained to Wessels "about being underpaid compared to their coworkers for doing the same work."  (Id. ¶ 65).  Wessels responded she would address the issue with Human Resources, but told plaintiff:  "You don't need more money since you can afford to take your children to the water park."  (Id. ¶ 68).

Plaintiff and Specialist Doe contacted their union representative and eventually had a meeting with representatives from the Hospital's human resources and finance departments about the pay disparity.  The next day, they were informed their pay would be brought up to $20.00 per hour.  According to plaintiff, she had been receiving less than her co-workers for nearly three years, and defendants made no effort to compensate her for these years of disparate pay.

After this incident, Wessels allegedly attempted to issue plaintiff and Specialist Doe a "write-up for making common errors that all employees regularly made."  (Am. Compl. ¶ 77).

Plaintiff and Specialist Doe contacted their union representative because they were confused by Wessels's write-up process.  Plaintiff requested her union representative be present for any formal meeting with Wessels about the write-up.  Wessels allegedly then "backtracked" and said the write-up was "educational."  (Id. ¶ 82).  Wessels had never given any employee, including plaintiff, an "educational" write-up before.

In late June 2020, Wessels denied plaintiff's request for paid time off for the July 4th holiday and granted Specialist Paganetti's request for the same day.  Plaintiff complained that July 4th would be Specialist Paganetti's seventh consecutive day off in violation of the Hospital's vacation policy.  At the beginning of August 2020, plaintiff requested one additional day of vacation at the end of her pre-approved six-day leave.  Wessels allegedly denied plaintiff's request, stating that no one could take seven consecutive days off.  Plaintiff complained to her union representative about both denials of paid time off.

In December 2020, Wessels allegedly "scream[ed]" at plaintiff and Specialist Doe "after they confronted her about ignoring them in the office."  (Am. Compl. ¶ 101).  Wessels also reprimanded plaintiff for being late or asking to work remotely due to a snowstorm, but excused Specialist Paganetti's tardiness for the same reason.

III.     Plaintiff's Second Pregnancy and COVID Exposure

On December 28, 2020, plaintiff informed Wessels via text message that she was pregnant because she needed to take time off to go to a physician's appointment the following week.  Wessels responded with "ok" and allegedly did not inform plaintiff she was entitled to FMLA leave for her second pregnancy.  (Am. Compl. ¶ 105).

According to plaintiff, on January 8, 2021, she informed Wessels she had been exposed to COVID through contact with her family members.  Plaintiff told Wessels she was "feeling

4

achy and had a headache," and was awaiting her COVID test results.  (Am. Compl. ¶ 112).

Plaintiff's physician told plaintiff to remain quarantined.  Plaintiff requested she be allowed to

work remotely during her quarantine period given her pregnancy and her physician's

instructions.  Wessels stated she would ask the Hospital administration about this arrangement.

On January 11, 2021, plaintiff again requested she be able to work remotely, and Wessels

told her she had not yet spoken with Hospital administration.  Later that day, plaintiff informed

Wessels she tested negative for COVID, and Wessels responded that working from home was

not an option.  Plaintiff then sent an email to Wessels's supervisor requesting she be allowed to

work from home during her quarantine period.  The following day, plaintiff again tested negative

for COVID.  She then called the Hospital's human resources department, and the representative

confirmed she was required to come into the office.

On January 15, 2021, plaintiff alleges she was terminated for "abandoning her position"

and "failing to call off or show up."  (Am. Compl. ¶ 128).  Plaintiff asserts she was "pre-textually

terminated . . . because of her pregnancy, in retaliation for seeking equal pay, and because

[defendants] did not want to provide her with leave she was entitled to."  (Id. ¶ 132).

## DISCUSSION

I.   <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.

Iqbal</u>, 556 U.S. 662, 679 (2009).[2]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," are not entitled to

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    FMLA Claims (First Cause of Action)

Plaintiff brings two types of claims under the FMLA:  (i) retaliation for exercising her FMLA-protected rights, and (ii) interference with exercising her FMLA-protected rights.  The Court will address each type of claim separately, after assessing the timeliness of these claims.

A.    Timeliness of FMLA Claims

Defendants argue plaintiff's FMLA claims accruing prior to January 12, 2021, two years prior to the commencement of this action (see Doc. #1-1), are time-barred.

The Court agrees.

In general, FMLA claims must be brought "not later than 2 years after the date of the last event constituting the alleged violation."  29 U.S.C. § 2617(c)(1).  However, for willful violations of the FMLA, claims must be brought "within 3 years of the date of the last event constituting the alleged violation."  Id. § 2617(c)(2).

6

In her opposition, plaintiff "does not concede that her 2019 leave is untimely," but states she "primarily relies on her 2021 need for leave to support her FMLA claims." (Pl. Opp. 20 n.2). And, plaintiff does not attempt to argue the applicable statute of limitations is three years for defendants' alleged violations.[3] Therefore, plaintiff's allegations regarding her 2019 FMLA leave will not be considered with respect to plaintiff's FMLA claims. More specifically, plaintiff's FMLA interference and retaliation claims based on the alleged July and August 2020 denials of paid time off and defendants' alleged 2020 attempts to interfere with plaintiff's intermittent leave are time-barred.

Accordingly, the Court's review of plaintiff's FMLA claims will be limited to those allegations related to defendants' retaliation for and interference with plaintiff's alleged 2021 need for FMLA leave. (See Am. Compl. ¶¶ 103–42).

### B. FMLA Retaliation Claim

Defendants argue plaintiff's FMLA retaliation claim must be dismissed because she fails plausibly to allege a causal connection between her termination and her exercise of FMLA-protected rights.

The Court disagrees.

#### 1. Legal Standard

In general, the FMLA entitles eligible employees to twelve work weeks of leave per year. 29 U.S.C. § 2612(a)(1). FMLA leave is triggered by, inter alia, "the birth of a son or daughter of the employee and in order to care for such son or daughter," "a serious health condition that

---

[3]     The amended complaint contains a conclusory allegation that defendants' actions as relevant to the FMLA claims were "malicious, willful, outrageous, and conducted with full knowledge of the law." (Am. Compl. ¶ 141). However, this bare allegation is insufficient to plausibly plead a willful violation of the FMLA to which the three-year statute of limitations would apply.

makes the employee unable to perform the functions of [her] position," or "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."  Id. § 2612(a)(1)(A), (C), (D).  The FMLA prohibits retaliation for "the exercise of or the attempt to exercise" an employee's rights under the statute.  Id. § 2615(a)(1); see Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 167 (2d Cir. 2017) (finding retaliation claims actionable under Section 2615(a)(1)).

FMLA claims are subject to the familiar burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016).  "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  Id.  "The Second Circuit treats instances in which an employer allegedly disrupts an employee's FMLA rights through termination as a form of retaliation."  Hewett v. Triple Point Tech., Inc., 171 F. Supp. 3d 10, 19 (D. Conn. 2016).

The standard for alleging causation for a FMLA retaliation claim is more lenient than the but-for causation standard—a plaintiff asserting an FMLA retaliation claim need only allege the "taking of FMLA leave [w]as a negative factor in employment actions."  Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d at 168.

2.   Analysis

At this early stage, plaintiff has sufficiently alleged her termination in January 2021 was causally connected to her need for FMLA leave in connection with her second pregnancy.

Plaintiff alleges she was terminated because defendants "did not want to provide her with leave she was entitled to," defendants "terminated Plaintiff before she would need to use FMLA protected leave," and Wessels "made it all too clear that neither pregnancy nor sick leave was acceptable under her watch." (Am. Compl. ¶¶ 131–32). In addition, plaintiff was allegedly terminated less than three weeks after informing Wessels of her second pregnancy. At the pleading stage, "a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her protected activity and the materially adverse action that she allegedly suffered in retaliation for engaging in that activity." Blake v. Recovery Network of Programs, Inc., 655 F. Supp. 3d 39, 47 (D. Conn. 2023) (collecting cases and concluding a gap of less than four weeks between the alleged FMLA notice and termination is "sufficient to survive a motion to dismiss"); cf. Alexander v. Bd. of Educ. of City Sch. Dist., 107 F. Supp. 3d 323, 329 (S.D.N.Y. 2015) (finding "the passage of more than two months has been viewed as beyond . . . any retaliatory nexus"). And here, in addition to the brief temporal proximity between her second pregnancy announcement and termination, the amended complaint details a history of animosity that began with plaintiff's first pregnancy announcement, supporting an inference that discrimination was a motivating factor in her termination shortly after announcing her second pregnancy.

Therefore, given the "minimal burden" of alleging a prima facie FMLA retaliation claim at this early stage, the Court concludes plaintiff's amended complaint sufficiently pleads her anticipated FMLA leave was a negative factor in her termination. Blake v. Recovery Network of Programs, Inc., 655 F. Supp. 3d at 47.

Accordingly, plaintiff's FMLA retaliation claim may proceed.

C.     FMLA Interference Claim

Defendants argue plaintiff's FMLA interference claim must be dismissed because she fails plausibly to allege she was denied benefits entitled to her under the FMLA.

The Court agrees.

1.     Legal Standard

Interfering with or restraining an employee's rights under the FMLA is unlawful.  29 U.S.C. § 2615(a)(1).  To establish a prima facie claim of FMLA interference, a plaintiff must demonstrate:  "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA."  Graziadio v. Culinary Inst. of Am., 817 F.3d at 424.  The question is essentially "whether the employer in some manner impeded the employee's exercise of his or her right."  Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam).  "The alleged interference must ultimately result in a denial of a benefit under the FMLA."  DeAngelo v. Yellowbook Inc., 105 F. Supp. 3d 166, 182 (D. Conn. 2015).

2.     Analysis

Here, plaintiff appears to assert two different instances of interference associated with her January 2021 need for FMLA leave:  (i) defendants' failure to notify her she could use FMLA leave during her COVID quarantine; and (ii) defendants' failure to notify her she could use FMLA leave for her second pregnancy.

With respect to plaintiff's COVID-related interference claim, plaintiff argues informing defendants "her immediate family members had COVID-19 [is] a circumstance expressly covered by the FMLA during the pandemic."  (Pl. Opp. 22 (citing COVID-19 and the Family

10

and Medical Leave Act Questions and Answers, U.S. Dep't of Lab.,

https://www.dol.gov/agencies/whd/fmla/pandemic#4)).  However, as plaintiff's cited authority

explains, an FMLA-eligible employee may be entitled to protected leave if she has or is caring

for a family member who has a "serious health condition as defined by the FMLA," which may

include COVID-19 "under certain circumstances."  COVID-19 and the Family and Medical

Leave Act Questions and Answers, U.S. Dep't of Lab., https://www.dol.gov/agencies/whd/fmla/

pandemic#3 (last visited Feb. 2, 2024).  For example, the source notes "common serious health

conditions that qualify for FMLA leave include:  conditions requiring an overnight stay in a

hospital" and "conditions that incapacitate the employee or the employee's family member for

more than three consecutive days and that include ongoing medical treatment."  (Id.).

Here, plaintiff alleges only that "she was feeling achy and had a headache," and, on

January 11, 2021, she found out she tested negative for COVID.  (Am. Compl. ¶¶ 112, 118).

Plaintiff does not allege she was caring for her sick family members who had tested positive for

COVID.  As such, plaintiff has not pleaded she was entitled to FMLA leave for the time period

during which she was quarantining due to COVID exposure.

With respect to plaintiff's second pregnancy-related interference claim, plaintiff alleges

that "[u]nlike the first time [she] informed Defendant Wessels she was pregnant, Defendant

Wessels did not refer Plaintiff to HR or tell Plaintiff of her rights under the FMLA for a second

set of 12 weeks of leave."  (Am. Compl. ¶ 106).  But failure to provide employees with adequate

notice of FMLA procedures may constitute FMLA interference only when "the lack of notice

caused the employee to forfeit FMLA leave."  Geromanos v. Columbia Univ., 322 F. Supp. 2d

420, 430 (S.D.N.Y. 2004) (dismissing FMLA interference claim when plaintiff "fail[ed] to

explain how the lack of notice affected her ability to take leave").  Here, plaintiff makes no

allegation that the lack of notice prevented her from taking her second pregnancy-related FMLA leave.  Indeed, she alleges "Defendants terminated Plaintiff before she would need to use FMLA protected leave" (Am. Compl. ¶ 131), which is an assertion more appropriately addressed under her FMLA retaliation claim.  See Hewett v. Triple Point Tech., Inc., 171 F. Supp. 3d at 19.

Accordingly, plaintiff's FMLA interference claim must be dismissed.

III.    NYSHRL Retaliation Claim (Third Cause of Action)

Defendants argue plaintiff's NYSHRL retaliation claim must be dismissed because plaintiff fails to allege she engaged in protected activity.[4]

The Court agrees.

A.    Legal Standard

For a NYSHRL retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020).  "[W]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Littlejohn v. City of New York, 795 F.3d 297, 317 (2d Cir. 2015).  Opposition "may include both formal and informal complaints, including complaints to management." Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d at 331.

---

[4]    Defendants also argue all of plaintiff's NYSHRL claims against Wessels must be dismissed because individual employees cannot be held liable for retaliation or discrimination under the NYSHRL.  Because the Court dismisses plaintiff's NYSHRL claims on other grounds, the Court need not address this argument for plaintiff's NYSHRL claims.

B.    Analysis

Here, plaintiff alleges she "repeatedly objected to and reported to Defendants about Defendants' discriminatory treatment of her."  (Am. Compl. ¶ 150).  But this bare allegation, without more, is insufficient to state a retaliation claim even at this early stage.  See Olsson v. ABM Taxi Dispatch Laguardia Airport, 2020 WL 5038742, at *6 (S.D.N.Y. Aug. 26, 2020) ("General complaints about employment concerns . . . do not constitute protected activity.").

To the extent plaintiff relies on her complaints to her union representative regarding her "confus[ion]" about Wessels's write-up process in December 2019 (Am. Compl. ¶ 79) and Wessels's denial of her requests for paid time off in the summer of 2020 (id. ¶¶ 93, 98),[5] plaintiff fails to allege she complained to the union representative that Wessels was engaging in employment discrimination based on her membership in a protected class.  While "[f]iling a union grievance regarding discriminatory treatment is a protected activity . . . union grievances that do not complain of discrimination [are] not."  Small v. N.Y.C. Dep't of Educ., 650 F. Supp. 3d 89, 105 (S.D.N.Y. 2023) (dismissing NYSHRL retaliation claim when plaintiff complained about unfair treatment but his complaint "did not contain any discrimination-based allegations").

Accordingly, plaintiff's NYSHRL retaliation claim must be dismissed.

IV.    NYSHRL Discrimination Claims (Second Cause of Action)

At the pleading stage of a NYSHRL employment discrimination claim, plaintiff must plausibly allege:  (i) "the employer took adverse action against [her]" and (ii) her status in a

_____

[5]    Because plaintiff brings a separate retaliation claim under NYEPA for her complaints related to unequal pay (Am. Compl. ¶¶ 171–76; see infra Section V.B), the Court does not analyze those complaints under the NYSHRL.

13

protected class "was a motivating factor in the employment decision." <u>Farmer v. Shake Shack Enters., LLC</u>, 473 F. Supp. 3d at 324.

Plaintiff brings NYSHRL discrimination claims based on her status in three protected classes: gender, pregnancy, and disability. <u>See</u> N.Y. Exec. Law § 296(1)(h). Plaintiff alleges these types of discrimination under three theories: disparate treatment, hostile work environment, and failure to accommodate. The Court analyzes each theory in turn.

A.    <u>Disparate Treatment Claim</u>

Defendants argue plaintiff's discrimination claim based on allegations of disparate treatment must be dismissed because plaintiff fails to allege any appropriate comparators outside of her protected class.

The Court agrees.

1.    <u>Legal Standard</u>

A plaintiff may show an adverse employment action was motivated by discriminatory intent either (i) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or (ii) "indirectly, . . . through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." <u>Gordon v. N.Y.C. Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). To establish indirect causation by disparate treatment, a plaintiff must show she was treated differently from a similarly-situated employee who is outside plaintiff's protected group. <u>See</u> <u>Richards-Byers v. N.Y.C. Dep't of Fin.</u>, 449 F. App'x 55, 57 (2d Cir. 2011) (summary order). However, "a plaintiff alleging [gender] discrimination cannot establish that [she] was terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class."

Toussaint v. NY Dialysis Servs., Inc., 230 F. Supp. 3d 198, 212–13 (S.D.N.Y.), aff'd, 706 F.

App'x 44 (2d Cir. 2017).

      2.    <u>Analysis</u>

Here, plaintiff only makes direct comparisons between herself and Specialist Paganetti.

In particular, plaintiff alleges:  (i) "Wessels would openly praise Specialist Paganetti's work and

ignore any accomplishments Plaintiff made" (Am. Compl. ¶ 56); (ii) Wessels allowed Specialist

Paganetti to take seven consecutive days off while denying a seventh consecutive day off to

plaintiff (<u>id</u>. ¶ 97); and Wessels would reprimand plaintiff if she was late during a snowstorm,

but did not subject Paganetti to the same reprimands (<u>id</u>. ¶ 102).

However, plaintiff cannot state a disparate treatment claim by comparing her treatment

with the treatment of Specialist Paganetti.  While plaintiff alleges she was treated discriminately

because of her pregnancies, and that Specialist Paganetti was never pregnant during plaintiff's

employment (Am. Compl. ¶ 24), plaintiff also was not pregnant between December 2019 and

December 2020 when the alleged disparate treatment between her and Paganetti took place (<u>see</u>

<u>id</u>. ¶¶ 42, 101).  Additionally, plaintiff's allegations of disability discrimination due to her

exposure to COVID did not occur until January 2021, after the alleged incidents of disparate

treatment between her and Paganetti.  (<u>Id</u>. ¶ 108).

Because plaintiff has not alleged she was pregnant or disabled at the time the disparate

treatment occurred, plaintiff's only cognizable disparate impact claims are based on her gender.

But Specialist Paganetti is also a woman (<u>see id</u>. ¶ 24)—a member of the same protected class to

which plaintiff belongs.  "Far from helping [plaintiff], these allegations are fatal to her disparate

treatment claim."  <u>Adams v. N.Y.S. Unified Ct. Sys.</u>, 2023 WL 5003593, *3 (S.D.N.Y. Aug. 4,

2023) (dismissing disparate treatment claim when the plaintiff "failed to allege any appropriate

comparators" as the employees she referenced were all members of "the same protected class").

Accordingly, plaintiff's NYSHRL disparate treatment claim must be dismissed.

B.      Hostile Work Environment Claim

Defendants argue plaintiff's hostile work environment claim must be dismissed because

plaintiff's 2019 allegations are time-barred and plaintiff fails to connect the alleged

discriminatory conduct with a protected characteristic.

The Court agrees.

1.      Legal Standard

To state such a NYSHRL hostile work environment claim, a plaintiff must allege she has

been subjected to "inferior terms, conditions, or privileges of employment because of [her]

membership in one or more . . . protected categories." N.Y. Exec. Law § 296(h). The statute

provides for hostile work environment claims "regardless of whether such harassment would be

considered severe or pervasive." Id. However, a claim for hostile work environment under the

NYSHRL "will not succeed if the offending actions are no more than petty slights or trivial

inconveniences." Alford v. NFTA-Metro, 2022 WL 17655868, at *6 (W.D.N.Y. Sept. 6, 2022),

report and recommendation adopted, 2022 WL 17626548 (W.D.N.Y. Dec. 12, 2022).

Courts in this Circuit use the "motivating factor" causation standard in determining

whether "a plaintiff was treated less well than similarly situated others because of their

membership in a protected group." Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 344

(S.D.N.Y. 2021). "Courts are thus cautioned to consider the totality of the circumstances" and to

consider alleged incidents "cumulatively, so that we may obtain a realistic view of the work

environment." Williams v. N.Y.C. Hous. Auth., 61 F.4th 55, 74 (2d Cir. 2023).

In addition, claims for discrimination under the NYSHRL must be filed within three years of the alleged unlawful discrimination.  Mouscardy v. Consol. Edison Co. of N.Y., Inc., 185 A.D.3d 579, 580–81 (2d Dep't 2020) (citing N.Y. C.P.L.R. § 214(2)).

>    2.    Analysis

Plaintiff asserts her hostile work environment claim is based on her pregnancies and gender.  (Pl. Opp. at 12).

As to the pregnancy-based discrimination, plaintiff alleges she announced her pregnancy in February 2019 and gave birth to her son on August 29, 2019 (Am. Compl. ¶¶ 20, 33).[6]  During this period, plaintiff alleges:  Wessels did not say congratulations when she announced her first pregnancy (id. ¶ 21); after plaintiff's pregnancy announcement, her co-workers "began to ignore and ostracize" her (id. ¶ 24); plaintiff's co-workers made comments about how plaintiff's pregnancy leave "had ruined everyone else's vacations" (id. ¶ 28); and Wessels greeted everyone in the small, shared office space except plaintiff (id. ¶ 29).  However, this action was commenced on January 12, 2023, and all of these events took place prior to January 12, 2020—i.e., more than three years before the commencement of this action.  Plaintiff does not allege any events suggesting she worked in a hostile work environment based on her pregnancy after January 12, 2020.  As such, plaintiff's hostile work environment claim based on her pregnancy is time-barred.

---

[6]    Although there is some authority suggesting a plaintiff may be considered a member of this protected class when she alleges she is "affected by pregnancy" at or near the time of the adverse employment action, plaintiff makes no allegation that she was "affected by pregnancy" or suffering from pregnancy-related complications after the birth of her son.  See Lettieri v. Anti-Defamation League Found., 2023 WL 5152447, *7 n.6 (S.D.N.Y. Aug. 10, 2023).

As to plaintiff's hostile work environment claim based on her gender, she fails to plead that any alleged mistreatment she suffered after January 12, 2020, was <u>because</u> <u>of</u> her gender. See <u>Kugel v. Queens Nassau Nursing Home Inc.</u>, 568 F. Supp. 3d 253, 265 (E.D.N.Y. 2021) (collecting cases and dismissing NYSHRL and NYCHRL hostile work environment claims because plaintiff failed to allege negative treatment was motivated by her gender).  Indeed, plaintiff fails to set forth any non-conclusory allegations that those of the opposite sex were treated better than her or that any of defendants' conduct was specifically "keyed" to her status as a woman.  <u>Lettieri v. Anti-Defamation League Found.</u>, 2023 WL 5152447, *7–9 (collecting cases and noting "generalized hostility or generally uncivilized behavior is not actionable").

Accordingly, plaintiff's NYSHRL hostile work environment claim must be dismissed.

C.    <u>Failure to Accommodate Claim</u>

Defendants argue plaintiff's failure to accommodate claim must be dismissed because plaintiff fails to allege she suffered from a disability within the meaning of the NYSHRL.

The Court agrees.

1.    <u>Legal Standard</u>

Claims brought under the NYSHRL for failure to accommodate are analyzed under the <u>McDonnell Douglas</u> burden-shifting framework.  <u>Berger v. N.Y.C. Police Dep't</u>, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).  To state a failure to accommodate claim under the NYSHRL, a plaintiff must allege "(1) he is a person with a disability under the meaning of the   . . . NYSHRL; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  <u>Id</u>. at 369.

Under the NYSHRL, "disability" is defined as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. § 292(21).

2.    <u>Analysis</u>

Here, plaintiff alleges on January 8, 2021, she learned she had been exposed to COVID, and, given her "pregnancy and her physician's instructions to stay quarantined," plaintiff requested "she be allowed to work remotely during her quarantine period, as a reasonable accommodation."  (Am. Compl. ¶ 114).  According to plaintiff, Wessels "responded that she could not arrange Plaintiff to work from home" but she "indicated that she would ask [the Hospital] administration department about the arrangement."  (<u>Id</u>. ¶ 115).  Plaintiff alleges she asked Wessels again on January 11, 2021.  (<u>Id</u>. ¶ 117).  Later that day, plaintiff informed Wessels she tested negative for COVID, and Wessels allegedly told her working from home was not an option.  (<u>Id</u>. ¶ 119).  Plaintiff took another COVID test the following day, which again came back negative.  (<u>Id</u>. ¶ 123).

None of these allegations suffices to plausibly allege plaintiff was disabled within the meaning of the NYSHRL.  Plaintiff acknowledges she tested negative for COVID multiple times, and the only associated symptoms she pleads are "feeling achy" and having a "headache." (<u>Id</u>. ¶ 112).  These allegations are insufficient to rise to the level of a disability as defined by the NYSHRL.  <u>Cf</u>. <u>Jones-Cruz v. Rivera</u>, 2022 WL 20437017, at *14 (finding plaintiff stated a NYSHRL disability discrimination claim when his COVID infection allegedly resulted in residual symptoms including "breathing problems, inflammation of the lungs, asthma like symptoms, shortness of breath, dizziness, and hypoxia").  Moreover, to the extent plaintiff's

failure to accommodate claim is premised on her second pregnancy, there is no indication she was experiencing a pregnancy-related complication that "prevents the exercise of a normal bodily function."  N.Y. Exec. § 292(21); see Krause v. Lancer & Loader Grp., LLC, 965 N.Y.S.2d 312, 322–23 (N.Y. Sup. Ct. 2013) ("[P]laintiff has failed to allege any disability within the meaning of NYSHRL, i.e., that her pregnancy impaired her in exercising a normal bodily function, or that she had any complications in connection with her pregnancy, which prevented her from normal life activity.").

Accordingly, plaintiff's NYSHRL failure to accommodate claim must be dismissed.

V.    Aiding and Abetting Claim Against Wessels (Fourth Cause of Action)

Defendants argue plaintiff's NYSHRL aiding and abetting retaliation or discrimination claim against Wessels must be dismissed because plaintiff fails to allege an underlying violation of the NYSHRL.

The Court agrees.

When "there is no underlying NYSHRL . . . violation," it follows that "there was no aiding or abetting of acts forbidden by the NYSHRL."  Boonmalert v. City of New York, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order).  As discussed above, see supra Sections III, IV, plaintiff fails plausibly to plead retaliation or discrimination claims under the NYSHRL against any defendant.

Accordingly, plaintiff's NYSHRL aiding and abetting claim against Wessels must be dismissed.

VI.   NYEPA Claims (Sixth and Seventh Causes of Action)

Plaintiff alleges two claims related to violations of NYEPA:  (i) defendants failed to pay her equal to her male, non-pregnant, non-Hispanic coworkers; and (ii) defendants retaliated against plaintiff for complaining about the alleged NYEPA violations.[7]

A.   Claims Against Wessels

As an initial matter, defendants argue plaintiff's NYEPA claims against Wessels must be dismissed because individual employees cannot be held liable under this statute.

The Court disagrees.

The New York Labor Law (the "NYLL") permits liability against "any person . . . employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. Law. § 190(3).  To determine whether an individual is an "employer," courts apply the "economic reality" test, which considers whether the alleged employer:  "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records."  Karic v. Major Auto. Cos., 992 F. Supp. 2d 196, 203 (E.D.N.Y. 2014); see Kim v. Lee, 576 F. Supp. 3d 14, 26–27 (S.D.N.Y. 2021) (applying economic reality test to NYLL retaliation claim).

Here, plaintiff alleges "Defendant Wessels had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment."  (Am. Compl. ¶ 11).  Plaintiff also alleges Wessels approved and denied vacation requests and generally acted as her supervisor.  While

---

[7]   Plaintiff's seventh cause of action is entitled "Retaliation in Violation of New York Equal Pay Act."  (Am. Compl. 24).  However, NYEPA does not contain a provision prohibiting retaliation, and plaintiff refers to New York Labor Law Section 215 in this cause of action.  As such, the Court construes this cause of action as a retaliation claim arising under New York Labor Law Section 215 for a violation of NYEPA.  (See id. ¶ 173).

plaintiff fails to allege Wessels determined her payment rate and method of payment because the Hospital's human resources and finance department representatives ultimately modified her pay (id. ¶¶ 70–71), at this early stage, she has pleaded Wessels acted as her employer for purposes of the NYLL.

Accordingly, plaintiff's NYEPA claims against Wessels may proceed.

B.      Unequal Pay Claim

Defendants argue plaintiff's NYEPA claim must be dismissed because plaintiff fails to allege she performed substantially equal work as compared to her colleagues who were allegedly paid more than her.

The Court disagrees that plaintiff fails to make sufficient allegations about the nature of her job as compared to Specialist Doe, but agrees plaintiff's allegations are insufficient with respect to Specialist Paganetti and Team Leader Bullock.

1.      Legal Standard

To establish a violation of NYEPA, a plaintiff must plausibly plead:  "(1) that the employer paid different wages to employees [outside of the protected class], (2) that the different wages were for work performed under similar conditions, and (3) that the work required the same level of skill, effort, and responsibility."  Durand v. Excelsior Care Grp. LLC, 2020 WL 7246437, at *3 (E.D.N.Y. Dec. 9, 2020).  A "protected class" may be defined by race, gender identity or expression, or disability.  N.Y. Lab. Law § 194(2)(b).  "A plaintiff is not required to demonstrate that her job is identical to a higher paid position, but rather must show that the two positions are substantially equal in skill, effort and responsibility."  Rose v. Goldman, Sachs & Co., Inc., 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001).

2.      Analysis

Here, plaintiff alleges "multiple sources" of unequal pay (Pl. Opp. 15):  (i) as compared with Specialist Doe, a male; and (ii) as compared with Specialist Paganetti and Team Leader Bullock, non-pregnant, non-Hispanic women.

With respect to plaintiff's unequal pay claim as compared to Specialist Doe, plaintiff alleges he was "hired on the same day" as her and he was paid one dollar more than her per hour "despite having the same experience and background in the field as Plaintiff."  (Am. Compl. ¶ 16).  Plaintiff also alleges she and Specialist Doe "performed the same functions and job duties." (Id. ¶ 31).  At this early stage, these allegations are sufficient to state a NYEPA claim for unequal pay as compared to plaintiff's male counterpart, Specialist Doe.

With respect to plaintiff's unequal pay claim as compared to Specialist Paganetti and Team Leader Bullock, plaintiff merely alleges they "performed the same functions and job duties" as her, except Team Leader Bullock had a "slightly more supervisory role."  (Am. Compl. ¶¶ 31–32).  These allegations are insufficient to show plaintiff's work required the same skill and responsibility as these co-workers.  Notably, plaintiff acknowledges Bullock held a supervisory position, when plaintiff did not.  And plaintiff does not provide any information about Paganetti's background and experience in the field or how long she has spent working as an authorization specialist at the Hospital as compared to plaintiff.  The bare allegation that these co-workers "performed the same functions and job duties" as plaintiff does not constitute sufficient factual support for her claims.  See Rose v. Goldman, Sachs & Co., Inc., 163 F. Supp. 2d at 244 (granting motion to dismiss when the amended complaint contained "nothing more than bald assertions that she and male employees of Defendant received disparate wages for substantially equal jobs under similar working conditions").

23

Accordingly, plaintiff's NYEPA claim alleging unequal pay as compared to Specialist Doe may proceed, but plaintiff's NYEPA claim alleging unequal pay as compared to Specialist Paganetti and Team Leader Bullock must be dismissed.

C.    Retaliation Claim

Defendants argue plaintiff's claim that she was retaliated against for complaining about unequal pay must be dismissed because it is untimely, and, in any event, plaintiff fails to allege her protected activity was causally related to an adverse employment action.

The Court agrees.

1.    Legal Standard

Section 215 of the NYLL prohibits an employer from discharging, threatening, penalizing, or otherwise discriminating against an employee who complains about a violation of the NYLL.  N.Y. Lab. Law § 215(1)(a).  "To establish a claim of retaliation under Section 215, the plaintiff must allege (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  Zhang v. Centene Mgmt. Co., 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023).  Retaliation claims arising under Section 215 have a two-year statute of limitations.  N.Y. Lab. Law § 215(2).

2.    Analysis

Here, plaintiff alleges that in May 2020 she "and Specialist Doe complained to Defendant Wessels about being underpaid compared to their coworkers for doing the same work."  (Am. Compl. ¶ 65).  Plaintiff also alleges she and Specialist Doe met with human resources and finance department representatives from the Hospital "about the pay disparity."  (Id. ¶ 70). Plaintiff asserts defendants retaliated against her for making these complaints by "unwarrantedly

writing up Plaintiff for common errors, denying Plaintiff paid time off, and ultimately terminating her employment." (Id. ¶ 173).

However, any retaliatory acts that occurred before January 12, 2021, which is the date two years prior to the commencement of this action (see Doc. #1-1), are time barred. Thus, plaintiff's allegations that Wessels retaliated against her in May 2020 by issuing an educational write-up or in the summer of 2020 by denying her vacation day requests will not be considered by the Court.

As to plaintiff's claim that her January 15, 2021, termination was retaliation for plaintiff's complaint of unequal pay, approximately eight months passed between plaintiff's alleged protected activity and her termination, a time period that "is too attenuated to draw an inference of retaliatory motive on the defendants' part." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 305 (S.D.N.Y. 2011) (finding a period of three months was too attenuated to establish a causal connection under Section 215).

Accordingly, plaintiff's NYLL retaliation claim must be dismissed.

VII.   Leave to Amend

In the last line of her opposition, without any elaboration, plaintiff requests leave to file a second amended complaint should the Court grant defendants' motion to dismiss.

Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), requests for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (leave to

amend may be denied when the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint").

Here, after defendants moved to dismiss the original complaint (Doc. #10), the Court instructed plaintiff to notify the Court whether she intended to file an amended complaint in response to the motion to dismiss, noting that if plaintiff elected not to file an amended complaint, the Court would be unlikely to grant plaintiff a further opportunity to amend to address the purported deficiencies made apparent by the fully briefed arguments in defendants' motion.  (Doc. #13).  Plaintiff did amend the complaint (Doc. #19), but, as discussed above, "failed to resolve its pleading deficiencies."  TechnoMarine SA v. Giftports, Inc., 758 F.3d at 506.  Moreover, plaintiff identifies no basis for amendment, sets forth no additional facts she intends to allege, or otherwise demonstrates that further amendment would not be futile.

Accordingly, leave to amend a second time is denied.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's request for leave to amend is DENIED.

Plaintiff's claims for interference under the FMLA, retaliation under the NYLL, and unequal pay as compared to Specialist Paganetti and Team Leader Bullock under NYEPA are dismissed, as are all her claims under the NYSHRL.

Plaintiff's claims for retaliation under the FMLA and unequal pay under NYEPA as compared to Specialist Doe shall proceed, except that plaintiff's allegations regarding claims accruing prior to January 12, 2021, will not be considered in assessing plaintiff's FMLA retaliation claim.

By February 26, 2024, defendants shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion.  (Doc. #24).

Dated: February 12, 2024
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge